1
2
3
4
5
6

Rory Quintana, SBN 258747
QUINTANA HANAFI, LLP
870 Market St., Ste. 819
San Francisco, CA 94102
Tel.: (415) 504-3121
Fax: (415) 233-8770
rory@qhplaw.com

*Attorneys for Plaintiff Marilyn de Illy*

7
8
9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19

**MARILYN DE ILLY** an individual,

            Plaintiff,

    vs.

**BED BATH & BEYOND, INC.** a New York corporation; and DOES 1 through 10, inclusive,

            Defendants.

**CASE NO.:**

**COMPLAINT FOR DAMAGES FOR AGE DISCRIMINATION (CAL. GOV'T. CODE § 12940); FAILURE TO PREVENT DISCRIMINATION (CAL. GOV'T CODE § 12940); FAILURE TO PAY WAGES (CAL. LABOR CODE § 204, 1194); FAILURE TO PAY ALL WAGES WHEN DUE (CAL. LABOR CODE §§ 201, 203); AND WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY.**

DEMAND FOR JURY TRIAL

20
21
22
23
24
25
26
27
28

        Plaintiff Marilyn de Illy ("de Illy" or "Plaintiff") brings this action against Defendants Bed Bath & Beyond, Inc. and DOES 1 through 10 (herein collectively "Defendants").

## NATURE OF THIS ACTION

1.  This is an action for relief from Defendants' violations of the California Fair Employment and Housing Act ("FEHA"), the California Labor Code and California common law.

2.  Plaintiff was discriminated against because of her age while employed by Defendant and Defendant knew of the discrimination and failed to prevent the discrimination.

3.   Plaintiff now seeks compensatory, general, and punitive damages, reasonable attorneys' fees, and costs, as well as other appropriate relief as determined by this Court for Defendants' violations of Plaintiff's rights.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

4.   The amount in controversy in this action exceeds $75,000 and the parties involved are from different states, therefore, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

5.   Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to Plaintiff's claims occurred in this district and Plaintiff resides in this district.

6.   Pursuant to Northern District Local Rule 3-2(d), this action should be assigned to the San Francisco District Court as the actions giving rise to Plaintiff's claims took place in San Mateo County.

## PARTIES AND PERSONAL JURISIDICTION

7.   Plaintiff is U.S. Citizen, currently aged seventy (70) years old.

8.   Plaintiff is a resident of San Mateo County in this judicial district.

9.   Plaintiff is informed and believes, and thereon alleges, that Defendant is a New York Corporation with its principal headquarters at 650 Liberty Ave., Union, New Jersey. Plaintiff is further informed and believes and thereon alleges that Defendant is licensed to do business in California under corporation number C1122590.

10. At all material times and for all purposes to the claims made herein, Defendant was Plaintiff's employer within the meaning of the California Government Code and California Labor Code.

11. This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of the privileges of conducting activities in the State of California and established minimum contacts sufficient to confer jurisdiction over Defendant, and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

12.  Defendant has had and continues to have continuous and systematic contacts with the state of California sufficient to establish general jurisdiction over Defendant.

13. Defendant advertises, employs workers, maintains offices and contracts with businesses in California.

14. The causes of action listed in the complaint arose from or relate to the contacts of Defendant with a California resident, thereby conferring specific jurisdiction over Defendant.

15. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as Does 1 through 10, inclusive, are unknown to Plaintiff and therefore said Defendants are sued under fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants fictitiously named herein is legally responsible in some actionable manner for the events described herein, and thereby proximately caused the damage to Plaintiff. Plaintiff will seek leave of Court to amend this Complaint to state the true names and capacities of such fictitiously named Defendants when the same have been ascertained.

16. Plaintiff is informed and believes and thereon alleges that at all times relevant herein, each Defendant authorized and ratified, aided, and abetted, and acted in concert with and/or conspired with each and every other Defendant to commit the acts and to engage in the employment practices complained of herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

17.  On September 17, 2021, Plaintiff properly notified the Department of Employment and Housing of her interest to sue Defendant's and has received a "right-to-sue notice" prior to filing this Complaint. A true and correct copy of Plaintiff's "right-to-sue notice" is attached hereto as Exhibit A.

## FACTUAL ALLEGATIONS

18.  Defendant is a nation-wide retail company with physical store locations throughout the country.

19.  Plaintiff began working for Cost Plus World Market ("CPWM") in or around January 2005 as a Real Estate Asset Manager.

20.  In or around June 2012, Defendant Bed Bath & Beyond purchased CPWM and retained Plaintiff as an employee in the real estate department.  In or around July 2013, Plaintiff began reporting directly to the then Vice President of Real Estate for Bed Bath & Beyond and was assigned the territory to include Iowa, Kansas, Minnesota, Missouri, Nebraska, North Dakota, and South Dakota.

21.  In August 2020, Defendant's real estate team consisted of five (5) real estate directors, all but one over the age of sixty (60) and all over the age of fifty (50). At the time of her termination, Plaintiff was sixty-nine (69) years old.

22.  On or about August 24, 2020, Defendant terminated Ralph Czitrom and Steven Goldberg from the real estate team. Mr. Czitrom was aged seventy-two (72) at the time of his termination and Mr. Goldberg was aged sixty (60) at the time of his termination. Following their termination, Plaintiff was tasked with temporary oversight of  parts of their territories which included: Washington, Oregon, California, Alaska, Southern Virginia. This work was in addition to Plaintiff's existing territory, which consisted of Washington D.C., Idaho, Iowa, Kansas, Maryland, Minnesota, Missouri, Montana, Nebraska, Nevada, North Dakota, South Dakota, Utah, Northern Virginia, West Virginia, and Wyoming.

23.  On or about September 1, 2020, Wade Haddad was hired by Defendant as the Senior Vice President ("SVP") of Real Estate and Store Development.

24.  On or about September 7, 2020, Plaintiff was informed by the Director of Human Resources, Sarah Madden, that she would be transferred from CPWM payroll to Defendant's payroll as of September 13, 2020.

25. On or about November 9, 2020, Steven Horowitz was hired by Defendant as the Vice President of Real Estate.

26. On November 18, 2020,  during his last one-on-one update meeting with Plaintiff, Mr. Haddad informed Plaintiff that she would be reporting to Mr. Horowitz moving forward. Mr. Haddad also noted to Plaintiff that he, "liked having [her] on the team because [she] ask[ed] the questions no one else is willing to ask."

27. On or about December 3, 2020, Plaintiff was informed by the Vice President of Architecture that Mr. Horowitz had cancelled his previously scheduled meeting with the Architecture and Construction teams concerning, among other items, projects in process by Plaintiff.

28. On or about December 7, 2020, Plaintiff met with Mr. Horowitz to update him on real estate matters she was working on so he would be prepared for any rescheduled meeting. Mr. Horowitz responded to this meeting request by castigating Plaintiff and telling her that it was her responsibility to "own [her] territory," and manage everything that goes on within it. Plaintiff responded that she was being responsible for her territory and that out of respect to his new role, she wanted to fill him in so he would not be blindsided in a meeting with other groups. Mr. Horowitz responded that Plaintiff was, "wasting his time," and "abdicating [her] responsibility."

29. In or around mid-December 2020, Defendant hired Sharon Haggard, aged forty-five (45), as a real estate director, Bill Castagna, aged thirty-six (36), as a real estate manager, and Jeff Lautenbach, aged fifty-three (53) as a real estate director.

30. Plaintiff is informed and believes, and thereon alleges, that in or around mid-December 2020, Mr. Horowitz spoke with another member of the real estate team and inquired, "whether [Plaintiff] was too old for the job."

31. On or about December 21, 2020, Defendant changed Plaintiff's territory, removing Washington D.C., Maryland, Virginia, and West Virginia, which were given to Mr. Castagna, and giving Alaska, Iowa, Kansas, Minnesota, Missouri, Montana, Nebraska, North Dakota, South Dakota, Utah, and Wyoming to Ms. Haggard. Plaintiff's territory was reduced to Washington, Oregon, California, Idaho, and Nevada.

32. Between January and March 2021, Plaintiff was repeatedly chastised by Mr. Horowitz and Mr. Haddad over minor issues inconsistent with how they treated Plaintiff's younger co-workers. Additionally, in that same time frame, Plaintiff was criticized for performing work by Mr. Horowitz that he either had requested himself or that had been requested by Mr. Haddad. For example, on or about February 4, 2021, Mr. Horowitz reviewed an email regarding the closure of a store in Tustin, California, despite knowing that the Boston Consulting Group had

recommending closing the store. In response, Plaintiff stated that she was recommending downsizing, as opposed to closing, because the store was profitable. She pointed out that she had successfully negotiated a deal with the landlord of a Santa Clara, California store and Mr. Horowitz responded, "other than the pleasure of doing business with you, why did the landlord agree to this deal? What's in it for him?" Another example of this hostile treatment included an incident on or about February 11, 2021, in which Mr. Horowitz asked how Plaintiff was coming along with new sites for the buybuyBaby ("BABY") stores. When Plaintiff stated that the Boston Consulting Group had recommended sites where there were only three thousand (3,000) babies in a twenty (20) mile radius, and others where BABY stores already existed, Mr. Horowitz quieted Plaintiff and told her that she was "wasting his time bringing this up," and that she should just use the report as a guide. Yet another example of this treatment included a February 26, 2021 incident in which Mr. Horowitz criticized Plaintiff for requesting a landlord to pay for fixtures and equipment, stating that landlords would never pay for such. Plaintiff agreed but reminded him that Mr. Haddad had expressly told her during prior meetings that she needed to get landlords to pay for all costs to move into a new site as outlined in a December 10, 2020 email from the Vice President of Construction.

33. On or about January 28, 2021, Mr. Horowitz invited human resources employee, Sarah Madden to Plaintiff's weekly update call. Instead of discussing work in progress, Mr. Horowitz began to "coach" Plaintiff on items necessary to be successful including: (1) focusing on questions asked and keeping answers short; (2) owning her sites and when a matter arises, lay out the facts, provide her opinion and possible solutions for senior management to consider; (3) that "everyone is pressed for time and that no one has time to listen to her theories"; (4) a lack of courtesy because she did not acknowledge an email response from that morning; and, (5) that she is one of the "seasoned" real estate directors and thus need to set a good example to new team members.

34. In or around February or March 2021, Mr. Horowitz mentioned in a team meeting that Plaintiff and Ms. Haggard wrote lengthy, detailed e-mail messages, while others did not provide enough information for management to understand the matter or make decisions. Later, Plaintiff

asked Ms. Haggard whether she had ever been criticized for her lengthy and detailed emails and she stated that she had not.

35. Between January and March 2021, Plaintiff had persistent and continuous IT issues, including connecting to shared drives and having no access to her prior twelve (12) years of work or historical data and losing connection to the company's systems altogether, sometimes for consecutive days at a time. Over the course of two months, Plaintiff opened thirteen (13) tickets with the IT help desk, and at least nine (9) different individuals worked to help get Plaintiff connected and/or transfer her historical data from her CPWM work.

36. On or about March 19, 2021, Plaintiff had a conference call with Mr. Haddad, Mr. Horowitz, and Ms. Madden in which she was told that she lacked the leadership and aggressiveness necessary to deliver the new BABY deals they needed. They also informed her that she exhibited poor time management and wasted department resources because of her lack of access to the shared drive. Mr. Haddad then pointed out that she was too theoretical, giving as examples an issue involving "Home Goods" and "Omni Channel topics."  Plaintiff responded, reminding Mr. Haddad that he had requested this information and asked her to follow up, at which point Mr. Horowitz interrupted her and stated that he, "had to get her off the subject." Ms. Madden then stated that Plaintiff had IT issues because she lacked the follow up and ability to get things done. Plaintiff was then offered a choice of a PIP, or an 8-week transition plan in which she would transition her work in process and look for another job. Plaintiff pointed out that, among other deals, she had delivered an approved BABY deal and $900,000 from landlords for remodels. Mr. Haddad responded, "we appreciate that."

37. On or about March 23, 2021, Plaintiff wrote to Mr. Horowitz and stated that it was clear he did not want her on his team and proposed a similar severance as that offered to her co-workers in August 2020.

38. On or about March 24, 2021, Defendant reject the proposal for a severance and stated that Ms. Madden would contact her to explain the transition plan.

39. On or about March 25, 2021, Ms. Madden reiterated the conditions of the eight-week transition plan discussed on March 19, 2021.

40. Included in this discussion was an inquiry by Plaintiff about unpaid PTO from CPWM. Ms. Madden stated that Defendant would pay the unused PTO if it had not been paid by CPWM.

41. On March 26, 2021, Mr. Horowitz wrote to Plaintiff and asked whether she would prefer he communicate that her departure was a "mutual parting of ways or a retirement."

42. Plaintiff's last day of work was May 14, 2021. Plaintiff did not receive pay for approximately 62.75 accrued and unused PTO days.

43. Plaintiff is informed and believes, and thereon alleges that her role and territories have been taken over by Ms. Haggard. Additionally, Plaintiff is further informed and believes and thereon alleges that all other new hires in the real estate department are under the age of fifty-five.

## FIRST CAUSE OF ACTION
### Age Discrimination
### (Government Code § 12940(a))

44.   Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

45.   At all times relevant to this Complaint and this claim for relief, California's Fair Employment and Housing Act ("FEHA"), California Government Code sections 12940 *et seq*., was in full force and effect and fully binding on Defendant. Defendant regularly employed more than five (5) people at all relevant times and was therefore an employer within the meaning of California Government Code section 12926(d).

46.   At all times relevant to this Complaint and this claim for relief, Steven Horowitz and Wade Haddad were "supervisors" as defined by California Government Code section 12926(t), because, they had authority to direct Defendant's employees' work and the authority to make and/or recommend key personnel decisions regarding those employees, including without limitation, the authority to discipline company employees and to recommend or approve the termination of employment for employees they managed or supervised.

47.   Mr. Horowitz and Mr. Haddad became Plaintiff's supervisors in 2020. From that point forward, Horowitz and Haddad supervised Plaintiff's employment with Defendant, and

functioned as Defendant's agent with respect to personnel actions that the company took toward her.

48.   Acting on behalf of Defendant, Horowitz and Haddad falsely criticized Plaintiff's work, gave her the specious option of completing an unreasonable and completely subjective performance improvement plan ("PIP") or resigning, and ultimately terminated her employment on or about May 14, 2021. Defendant's employee and human resources director, Sarah Madden was aware of Horowitz and Haddad's actions and the decision to terminate Plaintiff and assented to all of these acts.

49.   At the time of the acts described in the paragraph above, Plaintiff was adequately performing all of the essential functions of her position, by following the directions of her supervisor to the extent possible, and by completing her assigned work as efficiently and quickly as she could. Plaintiff's ability to complete these tasks or comply with instructions was interfered with by computer issues outside her control, but for which she was later blamed, and by misleading and contradicting instructions from Horowitz and Haddad.

50.   The FEHA, in California Government Code section 12940(a), prohibits any employer from discharging a person from employment, or discriminating against a person in compensation or in terms, conditions or privileges of employment because of that person's age.

51.   Plaintiff is a member of a group protected by the FEHA and is protected by the FEHA's prohibition against age discrimination in California Government Code section 12940(a), and elsewhere in the FEHA. Specifically, Plaintiff was 69 years old when she was terminated by Defendant.

52.   Plaintiff's age was a substantial motivating factor in Defendant's decision to terminate her employment with Defendant. The evidence of discriminatory animus includes without limitation, that: Plaintiff was the second oldest employee in her division, and Horowitz expressly asked whether Plaintiff was "too old for the job," as well as asking Plaintiff whether she wanted to state that the ending of her employment be described as "retirement." Horowitz also repeatedly denigrated Plaintiff's work using language that indicated a bias against her on the basis of age.

53.  Horowitz's criticisms of Plaintiff were also substantially motivated by her age. Those warnings and the PIP incorporated Horowitz's biased negative perceptions of her and became part of Plaintiff's permanent personnel file with the company.

54.  Defendant's termination of Plaintiff's employment therefore constitutes discrimination based on age and violates California Government Code section 12940(a).

55.  The discriminatory conduct described in this Complaint occurred with reasonable frequency as part of a continuing pattern from the time Haddad and Horowitz became Plaintiff's supervisors in 2020 through the termination of Plaintiff's employment with Defendant in 2021, and therefore constituted a continuing violation of Plaintiff's rights under the FEHA to be free of unlawful discrimination.

56.  As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered, and continues to suffer, substantial losses in earnings and other employment benefits, and has incurred other economic losses. Defendant's termination of Plaintiff's employment permanently damaged her career and earnings potential, including reputational damage that will affect her future earnings with other employers, and in spite of her efforts, she has not yet found other comparable employment.

57.  As a further direct, foreseeable, and proximate result of Defendant's unlawful personnel actions, as described above, as well as her termination from the company, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, shame, and embarrassment, all to her damage, in an amount to be proven at the time of trial.

58.  The aforementioned conduct constitutes oppression, fraud, and malice thereby entitling Plaintiff to an award of exemplary damages.

## SECOND CAUSE OF ACTION
### Failure to Prevent Discrimination
### (Government Code § 12940(k))

59.  Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

60.  Defendant's criticisms and termination of Plaintiff's employment were substantially motivated by Plaintiff's age.

61.  Defendant failed to take all reasonable steps necessary to stop the discrimination against Plaintiff.

62.  Defendant's human resources staff were aware of the criticisms and the PIP issued to Plaintiff by Horowitz and Haddad, assented to the issuing of those criticisms and documents, and also assented to the termination of Plaintiff's employment.

63.  Defendant's human resources staff were aware that Plaintiff was 69 years old, and Defendant was aware that Horowitz had inquired whether Plaintiff was too old for the position.

64.  Defendant's human resources staff were aware that Horowitz had critiqued Plaintiff based on issues that were outside of her control related to technology, that he had criticized how she spoke and that he had repeatedly told her to speak on issues in a more concise manner and "less theoretically," despite the fact that the "theoretical" issue on which she spoke was information and research requested by Haddad.

65.  In spite of their actual and constructive knowledge of Horowitz and Haddad's wrongful conduct toward Plaintiff, Defendant's human resources department and management failed to investigate or take appropriate disciplinary action against Horowitz or Haddad for that conduct and failed to prevent Horowitz from improperly disciplining and then unlawfully terminating Plaintiff.

66.  Defendant's director of human resources, Sarah Madden knew of the criticism and termination and did not intervene to stop either.

67.  As a result of Defendant's failure to act to prevent discriminatory conduct against Plaintiff, Horowitz and Haddad were able to improperly discipline her and then unlawfully terminate her employment.

68. As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered, and continues to suffer, substantial losses in earnings and other employment benefits, and has incurred other economic losses. Defendant's termination of Plaintiff's employment permanently damaged her career and earnings potential, including reputational damage that will affect her future earnings with other employers, and in spite of her efforts, she has not yet found other comparable employment.

69.  As a further direct, foreseeable, and proximate result of Defendant's unlawful personnel actions, as described above, as well as her termination from the company, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, shame, and embarrassment, all to her damage, in an amount to be proven at the time of trial.

70.   The aforementioned conduct constitutes oppression, fraud, and malice thereby entitling Plaintiff to an award of exemplary damages.

### THIRD CAUSE OF ACTION
**Wrongful Termination in Violation of Public Policy**

71.   Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

72.  At all times relevant to this Complaint and this claim for relief, California's Fair Employment and Housing Act ("FEHA"), California Government Code sections 12940 *et seq*., was in full force and effect and fully binding on Defendant. Defendant regularly employed more than five people at all relevant times and was therefore an employer within the meaning of California Government Code section 12926(d).

73.  By engaging in the wrongful conduct described in Paragraphs 18-70 of this Complaint, Defendant violated the public policies of the State of California, as set forth in the FEHA, which prohibits employers and their officers and agents from discriminating against employees on the basis of their age.

74.  The same acts by Defendant that violated public policy, including their discriminatory termination of Plaintiff's employment, caused, and therefore were at a minimum substantial motivating reasons for the termination of Plaintiff's employment.

75. As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered, and continues to suffer, substantial losses in earnings and other employment benefits, and has incurred other economic losses. Defendant's termination of Plaintiff's employment permanently damaged her career and earnings potential, including reputational damage that will affect her future earnings with other employers, and in spite of her efforts, she has not yet found other comparable employment.

76. As a further direct, foreseeable, and proximate result of Defendant's unlawful personnel actions, as described above, as well as her termination from the company, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, shame, and embarrassment, all to her damage, in an amount to be proven at the time of trial.

77. The aforementioned conduct constitutes oppression, fraud, and malice thereby entitling Plaintiff to an award of exemplary damages.

## FOURTH CAUSE OF ACTION
### Failure to Pay Wages for All Hours Worked
### Cal. Labor Code §§ 204, 227.3

78. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

79. At all times relevant to this action, Plaintiff was employed by Defendant within the meaning of the California Labor Code.

80. California Labor Code section 204 requires employers to pay employees for all work performed on the job.

81. California Labor Code section 227.3 provides that all vested vacation shall be paid to employees as wages at their final rate in accordance with company policy.

82. At the time of her termination, Plaintiff had accrued and unused approximately 62.75 vested vacation days.

83. Defendant did not pay plaintiff wages for these unused vacation days.

84. By failing to pay plaintiff these accrued, vested and unused vacation hours, Defendant willfully violated the California Labor Code. As a result of the unlawful acts of Defendant, Plaintiff has been deprived of compensation in amounts to be determined at trial and is entitled to recovery of such amounts, plus interest thereon, attorneys' fees, and costs, under California Labor Code section 1194.

## FIFTH CAUSE OF ACTION
### Failure to Pay Wages for All Hours Worked
### Cal. Labor Code §§ 204, 1194

85. PLAINTIFF incorporates by reference all preceding paragraphs as though fully set forth herein.

86.   At all times relevant to this action, Plaintiff was employed by Defendant within the meaning of the California Labor Code.

87.   California Labor Code section 201 requires an employer to pay all compensation due and owing to an employee immediately upon termination of that employee's employment.

88.   California Labor Code section 203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by section 201, then the employer is liable for waiting time penalties in the form of continued compensation of up to thirty workdays.

89.   Defendant willfully failed and refused to timely pay compensation and wages, including accrued, vested, and unused vacation days, to Plaintiff. As a result, Defendant is liable to Plaintiff for waiting time penalties, together with interest thereon, under Labor Code section 203.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for the following judgment:

1.   Declaratory Judgment finding Defendant's conduct, as alleged herein, violated Plaintiff's rights pursuant to the California Labor Code and California Government Code;

2.   Awarding lost wages and other compensation denied or lost to Plaintiff by reason of Defendant's violations of the law;

3.   Awarding compensatory damages for pain and suffering by reason of the actions of Defendants;

4.   Award of exemplary damages;

5.   Award of reasonable attorneys' fees and costs pursuant to Cal. Gov. Code section 12965 subdivision (b), and Labor Code sections 218.5 and  1194;

6.   Award of prejudgment interest; and

7.   For such other and further relief as the Court deems proper.

///

///

///

Date: October 18, 2021

Rory Quintana
Attorney for Plaintiff
Marilyn de Illy

# EXHIBIT A

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

September 17, 2021

Marilyn de Illy
2338 Kent Street
San Mateo, California 94403

RE:   **Notice to Complainant**
DFEH Matter Number: 202109-14784517
Right to Sue: de Illy / Bed Bath and Beyond Inc.

Dear Marilyn de Illy:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents.  If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                   GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                      KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

September 17, 2021

RE:   **Notice of Filing of Discrimination Complaint**
      DFEH Matter Number: 202109-14784517
      Right to Sue: de Illy / Bed Bath and Beyond Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot
program. Under this program, established under Government Code section 12945.21,
a small employer with 5 -19 employees, charged with violation of the California Family
Rights Act, Government Code section 12945.2, has the right to participate in DFEH's
free voluntary mediation service. Under this program both the employee requesting an
immediate right to sue and the employer charged with the violation may request that all
parties participate in DFEH's free voluntary mediation service. A request for mediation
must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue.
If mediation is requested, the employee is prohibited from filing a civil action until
mediation is complete. The employee's statute of limitations to file a civil action,
including for all related claims not arising under section 12945.2, is tolled from DFEH's
receipt of a mediation request under section 12945.21 until mediation is complete.  To
request DFEH Small Employer Family Leave Mediation, email
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on
the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

### DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

September 17, 2021

Marilyn de Illy
2338 Kent Street
San Mateo, California 94403

RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 202109-14784517
      Right to Sue: de Illy / Bed Bath and Beyond Inc.

Dear Marilyn de Illy:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective September 17, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete.  To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

1

2

3

4

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

5   Marilyn de Illy                                                    DFEH No. 202109-14784517

6
                                            Complainant,
7   vs.

8   Bed Bath and Beyond Inc.
    650 Liberty Ave.
9   Union, New Jersey 07083

10                                          Respondents

11   _____

12

13   **1.** Respondent **Bed Bath and Beyond Inc.**  is an **employer Bed Bath and Beyond Inc.** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

14

15

16   **2**. Complainant **Marilyn de Illy**, resides in the City of **San Mateo,** State of **California.**

17   **3**. Complainant alleges that on or about **May 14, 2021**, respondent took the following adverse actions:

18

19   **Complainant was discriminated against** because of complainant's age (40 and over) and as a result of the discrimination was terminated.

20

21   **Additional Complaint Details:** I am currently 70 years old and at the time of my termination described below, I was 69. began working for Cost Plus World Market on or about January 6, 2005.  Cost Plus World Market was purchased by Bed Bath and Beyond in June 2012 and I stayed in the same role.  In the 16 years I worked as a Real Estate Asset Manager and held various other roles in Real Estate Asset Management throughout my career, including manager and director level positions. I received positive reviews and feedback about my work, was never disciplined for performance or other reasons, received numerous raises and bonuses and was otherwise an excellent employee. On January 28, 2021, I received coaching from my manager Steven Horowitz with the HR Director on the line, which included things like focusing only on questions asked, that my emails were too long, they only want information on the issue at hand, and other issues which had never been

22

23

24

25

26

27                                          -1-

28   Date Filed: September 17, 2021

discussed before. This was the first time I ever received negative feed back.  I have learned since my termination that before this call, my supervisor spoke to the interim head of real estate and asked him whether I was "too old for the job." In March 2021, I received the choice of engaging in a performance improvement plan or accepting an 8 week transition period.  I did not believe the PIP was a good faith PIP and that I was being set up to fail, so I chose the 8 week transition period.  After informing Mr. Horowitz of my decision, he asked whether I wanted the company to refer to this as "parting ways" or as "retirement".  I had never discussed nor considered retirement.  On information and belief, my team was made up of 5 people who were all over the age of 50.  All of us were terminated.  On information and believe, I believe I was replaced with someone who is 45 years old, approximately 24 years younger than me at the time of my termination.  I believe I was terminated because of my age.

-2-

*Complaint – DFEH No. 202109-14784517*

Date Filed: September 17, 2021

VERIFICATION

I, **Rory C. Quintana**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On September 17, 2021, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**San Francisco, CA**

-3-

*Complaint – DFEH No. 202109-14784517*

Date Filed: September 17, 2021